UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HECTOR BAIRES-QUIROZ,<br>Petitioner,<br>v.<br>BRUCE SCOTT et al.,<br>Respondents. | CASE NO. 2:26-cv-03896-DGE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

Before the Court is Petitioner's petition for writ of habeas corpus. (Dkt. No. 1.) For the following reasons, the Court GRANTS the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Petitioner, a citizen of Honduras, entered the United States alone as a minor in December 2021. (Dkt. Nos. 1 at 1, 4; 8 at 1.) Petitioner was originally placed in the custody of the Office

of Refugee Resettlement ("ORR"), then released to a sponsor.[1] (*Id.*) Petitioner attended high school in New Jersey, worked in roofing, and paid United States taxes. (Dkt. No. 1 at 4.)

On September 29, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner in Kent, Washington. (Dkt. Nos. 1 at 4; 8 at 2.) Respondents state the arrest was made "pursuant to a Form I-200 Warrant of Arrest of Alien issued by an ERO supervisor based on a DHS system query that indicated that the Petitioner had no pending or approved immigration applications that would allow him to remain in the United States, and that he was illegally present in the United States." (Dkt. No. 8 at 2.) Petitioner was then transported to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. Nos. 1. at 1–2; 8 at 2.)

On October 13, 2026, ICE started to transfer Petitioner from NWIPC to the Jackson Parish Corrections Center in Jonesboro, Louisiana. (Dkt. No. 8 at 2.) First, Petitioner was put on a flight which departed Washington at 3:22 pm on October 13, 2026. (*Id.*) This flight landed at 5:47PM in Florence, Arizona for staging. (*Id.*) Next, Petitioner was put on a flight from Arizona to Louisiana, departing at 7:46am on October 14, 2026, and landing in Louisiana at 1:57pm on October 14, 2026. (*Id.*) Petitioner was booked into the Jackson Parish Corrections Center in Jonesboro, Louisiana at 2:40PM on October 14, 2026. (*Id.*) Petitioner is currently detained at the Jackson Parish Corrections Center. (*Id.*)

---

[1] In a declaration from Deportation Officer Vincent Cvitanovic, Respondents state Petitioner was released under an Order of Recognizance ("OREC"). (Dkt. No. 8.) However, in their return briefing, Respondents' counsel stated she could not find any records supporting this. (Dkt. No. 7 at 2.)

At the time Petitioner filed this pending petition, he was in removal proceedings before the Tacoma Immigration Court. (Dkt. No. 1 at 4.) Petitioner has no criminal history. (*Id.*) He has never been deported nor ordered removed. (*Id.*)

**B. Procedural Background**

Petitioner, proceeding pro se, filed a writ for habeas corpus on October 13, 2026. (Dkt. No. 1.) The Clerk docketed the petition at 5:17PM that day. (*Id.*) Petitioner signed the petition on October 10, 2026. (*Id.* at 8.) The envelope in which the petition to the Court was mailed in marks the postage as paid on October 10, 2026. (Dkt. No 1-2 at 15.) The tracking information and origin code associated with the mailing show the mailing originated in Miami, Florida. (Dkt. Nos. 1-2 at 15; 9-1 at 3; 9-2 at 2.)

Petitioner requests release, and in the alternative, an individualized bond hearing. (Dkt. No. 1 at 7.) Petitioner states he was not provided with any bond hearing and requesting one would be futile. (*Id.* at 2–4.)

Petitioner also filed an Emergency Motion for Temporary Restraining Order Barring Removal and Transfer. (Dkt. No. 2.) This Court denied Petitioner's Emergency Motion for a Temporary Restraining Order as moot as petitioner did not allege his removal was imminent and the Court's Scheduling Order required seven-day notice prior to any attempted transfer or removal. (Dkt. No. 5.)

Respondents filed a response to Petitioner's habeas petition on October 27, 2026. (Dkt. No. 7.) Respondents argue because ICE transferred Petitioner out of the Western District of Washington prior to the filing of this habeas petition, this Court has no jurisdiction over the petition. (*Id.* at 7.)

Petitioner has also filed a Notice of Transfer in Violation of Court Orders and Emergency Motion to Enforce Orders. (Dkt. No. 10.) Petitioner notified the Court that Respondents moved him outside of the Western District of Washington, stating this was in violation of this Court's order requiring notice before transferring Petitioner out of the District. (*Id.* at 1–2.) Petitioner signed the motion on October 26, 2026, and the Clerk docketed the motion on October 29, 2026. (*Id.* at 3.)

## II. ANALYSIS

### A. Legal Standard

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).

### B. This Court Has Jurisdiction

"Federal courts have authority to grant writs of habeas corpus 'within their respective jurisdictions.'" *Malone v. Calderon*, 165 F.3d 1234, 1237 (9th Cir. 1999) (quoting 28 U.S.C. § 2241). Establishing jurisdiction for a habeas petition requires a petitioner (1) to file within their district of confinement (*Rumsfield v. Padilla*, 542 U.S. 426, 443 (2004) ("for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement")) and (2) name their immediate custodian as a respondent (*Id.* at 435 ("the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.")). Specifically,

the custodian with "the power to produce the body of [the petitioner] before the court or judge" must be named so that the petitioner "may be liberated if no sufficient reason is shown to the contrary." *Id.* at 435; 28 U.S.C. § 2242 (the proper respondent is "the person who has custody over" the petitioner). Jurisdiction in the habeas statute does not refer to a district court's subject matter jurisdiction. *Id.* at 434 n.7. Rather, it is better "understood as a question of personal jurisdiction or venue." *Id.* at 451 (Kennedy, J., concurring).

Although the general rule in habeas petitions is that petitioners must file in the district of confinement and name their immediate custodian as respondent, there are several exceptions to this general rule. Relevant here, there is an exception called the *Endo* exception, after the 1944 Supreme Court case *Ex parte Endo*, 323 U.S. 283 (1944). "*Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Padilla*, 542 U.S. at 441; *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) ("[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.").

Here, Respondents do not provide any claims as to who the custodian of record was when the petition was filed with this Court on 5:17PM on October 13, 2026. (*See generally*, Dkt. Nos. 7, 8, 9.) Petitioner was still in the air and had not yet landed in Florence, Arizona when the petition was filed. (*See* Dkt. No. 8 at 2.) Absent any evidence to the contrary, this Court finds the warden of the Jackson Parish Corrections Center did not have custody over Petitioner until Petitioner was booked into the facility the following day at 2:40PM on October 14, 2026. (*Id.*) Accordingly, the Court finds that the appropriate respondent is the person who had physical

custody over Petitioner at the time the petition was filed: the Seattle ICE Field Office Director. *See Tum Ailon v. Hernandez*, Case No. 2:26-cv-03531-LK, 2026 WL 3083792, at *2 (W.D. Wash. Oct. 2, 2026); *Ozturk v. Hyde*, 136 F.4th 382, 393 n.3 (2d Cir. 2025) (the contention that a petitioner's immediate custodian at the time she filed her petition "was the warden of the Vermont facility to which she had not yet arrived" was "at odds with the straightforward rule set out in *Padilla*"; "'the default rule is that the proper respondent is the warden of the facility where the prisoner is being held,' not the person who will at some unspecified future time have the ability to produce the prisoner's body or the warden of a facility where the prisoner is not yet being held." (quoting *Padilla*, 542 U.S. at 435) (internal citations omitted)); *cf. Suri v. Trump*, 184 F.4th 260, 278 (4th Cir. 2026) (holding that "[j]urisdiction is . . . proper in [petitioner's] last-known location" when his immediate custodian and district of confinement were unknown at the time of filing). Both the Seattle ICE Field Office Director and the warden of the NWIPC are named as Respondents in this petition. (Dkt. No. 1 at 1, 3.) Therefore, the Court has jurisdiction over this petition as jurisdiction attached upon the initial filing. Transfer of this petition to the Western District of Louisiana is unwarranted.

**C. Petitioner is Not Subject to Mandatory Detention**

Respondents do not argue Petitioner is subject to mandatory detention procedures contained in § 1225, nor can they because Petitioner came to the United States as an unaccompanied minor. "The detention of unaccompanied minor children is governed by the TVPRA [(Trafficking Victims Protection Act)], which does not mandate detention." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025). Instead, the TVPRA provides that "an unaccompanied alien child in the custody of the Secretary of Health and Human Services shall be promptly placed in the least restrictive setting that is in

the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). If the unaccompanied child "reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(B). This requirement of placement in the least restrictive setting is in direct conflict with mandatory detention. *See L.G.M.L. v. Noem*, 800 F. Supp. 3d 100, 111 (D.D.C. 2025) (explaining that under the TVPRA, unaccompanied minors must be placed in removal proceedings, and that "the other removal possibility—which the TVPRA excludes for unaccompanied alien children—is 'expedited removal.'" (internal citations omitted); *Garcia Gabriel v. Hermosillo*, Case No. 2:25-cv-02594-DGE-GJL, 2026 WL 194233, at *3 (W.D. Wash. Jan. 26, 2026).

In summary, the Court concludes Petitioner is not subject to mandatory detention pursuant to § 1225, and instead is subject to the procedures contemplated under § 1226.

**D. Petitioner's Current Detention Violates Due Process**

Respondents provide no argument as to why Petitioner is presently detained or otherwise justifying Petitioner's detention. (*See generally*, Dkt. No. 7.) Conversely, Petitioner argues his present detention violates due process as Respondents provided no process prior to detention. (Dkt. No. 1 at 6–7.)

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

Petitioner is correct: the *Mathews* factors weigh in Petitioner's favor. First, Petitioner has a strong private interest in his continued liberty. Having been previously released and allowed to remain at liberty for almost six years, Petitioner maintained a private interest in freedom from imprisonment. During these years, Petitioner attended high school, worked in roofing, and paid United States taxes. (Dkt. No. 1 at 4). Indeed, an unaccompanied minor who is released to a sponsor "obtains a liberty interest in his continued freedom, even after reaching adulthood." *Aparicio Giron v. Warden of the Golden State Annex*, Case No. 1:26-cv-03891-VC, 2026 WL 2606397, at *2 (E.D. Cal. Sept. 2, 2026) (collecting cases).

Moving to the second *Mathews* factor, the Court finds here the risk of erroneous deprivation without any hearing is high. Courts in this district have previously held that the government violates due process when an individual is placed in removal proceedings and released on their own recognizance but is then re-detained without a pre-deprivation hearing. *See Guevara Mejia v. Hernandez*, Case No. 2:26-cv-03089-DGE, Dkt. No. 9 at 7–8 (W.D. Wash. Sep. 24, 2026) (collecting cases).

As for the third *Mathews* factor, the Court finds that the Government's interests in Petitioner's re-detention without a hearing is minimal, as it has previously concluded. *See, e.g.*, *Ramirez Tesara v. Wamsley*, Case No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *5 (W.D. Wash. Sep. 12, 2025); *Espinoza Palacios v. Hermosillo*, Case No. 2:26-cv-491-JNW, 2026 WL 686138, at *8 (W.D. Wash. March 11, 2026) (citing *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025). The Government's interests in re-detaining an individual it previously released to a sponsor as an unaccompanied minor "without adequate

process is minimal or non-existent." *Caisa Telenchana v. Hermosillo*, Case No. 2:26-cv-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. March 12, 2026).

This Court therefore holds Petitioner's present detention violates his constitutional right to due process. A bond hearing now cannot cure that deprivation; release is the proper remedy. *See e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

## III. ORDER

Based on the foregoing, the Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. No. 1), and further ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL deliver a copy of this Court order to Petitioner.
2. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1) DAY** of this Order.
3. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.
4. Within **TWENTY-FOUR (24) HOURS** of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.
5. Petitioner's Notice of Transfer in Violation of Court Orders and Emergency Motion to Enforce Orders (Dkt. No. 10) is DENIED as moot.

The Clerk is directed to calendar this event, close the matter, and send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 2nd day of November, 2026.

David G. Estudillo
United States District Judge